UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN MILITO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SNAP INC., a foreign profit corporation doing business as SNAPCHAT and SNAPCHAT, INC.; and DOES 1-20, as yet unknown Washington entities,<br><br>Defendants. | CASE NO. 2:25-cv-00387-MJP<br><br>REMAND ORDER |

## INTRODUCTION

This matter comes before the Court on Plaintiff's Motion to Remand (Dkt. No. 11). Having reviewed the Motion, Defendant's Opposition (Dkt. No. 13), the Reply (Dkt. No. 14), and all supporting materials, the Court GRANTS the Motion.

## BACKGROUND

Plaintiff John Milito filed this class action in King County Superior Court against Snap Inc. and various Doe Defendants, claiming Defendants violated the pay transparency

requirements of Washington's Equal Pay and Opportunities Act (EPOA), RCW 49.58.110. Defendants removed the action to this Court, and Milito asserts that the matter was improperly removed. The Court reviews the statutory and factual background.

**A.    Statutory Background**

Washington State passed its first equal pay legislation, the Equal Pay Act, in 1943, and amended it for the first time in 2018, at which time it became known as the EPOA. See RCW 49.12.175; 49.58.005. The Washington Legislature found that "despite existing equal pay laws, there continue[d] to be a gap in wages and advancement opportunities among workers in Washington, especially women." RCW 49.58.005. The law was updated "to address income disparities, employer discrimination, and retaliation practices, and to reflect the equal status of all workers in Washington state." Id.

In 2019, the EPOA was further updated to address discriminatory hiring practices by prohibiting employers "from seeking the wage or salary history of an applicant for employment in certain circumstances," and by requiring "an employer to provide wage and salary information to applicants and employees" upon request, although only "after offering the applicant the position." RCW 49.58.005; see also RCW 49.58.100, -.110.

In 2022, the Legislature again amended the EPOA by modifying RCW 49.58.110 to require employers to proactively disclose compensation information when a position is posted as available. This "allows a discussion at the start of the process instead of after an offer has been made, which will increase the ability to negotiate pay." (Complaint ¶ 5 (quoting H.B. Rep. ESSB 5761, at 2 (Wash. 2022)) (Dkt. No. 1-1).) As Milito points out, the Legislature amended the Act in part to "'allow[] a discussion at the start of the process instead of after an offer has been made, which will increase the ability to negotiate pay.'" (Id. (quoting H.B. Rep. ESSB 5761, at 2).) The

Legislature was also concerned that "'[m]any candidates spend hours going through rounds of interviews only to find out they can't live on the offered pay.'" (Id. (quoting S.B. Rep. ESSB 5761, at 3 (Wash. 2022)).)

The EPOA now states, in relevant part, that an employer must "disclose in each posting for each job opening the wage scale or salary range, and a general description of all of the benefits and other compensation to be offered to the hired applicant." RCW 49.58.110(1). It is this provision that Milito claims Defendants violated.

**B.    Factual Background**

Milito lives in Washington and applied for a job opening Defendants offered in Washington. (Compl. ¶¶ 15, 21.) Milito alleges "[t]he posting for the job opening Plaintiff applied to did not disclose the wage scale or salary range being offered." (Id. ¶ 25.) He alleges that he and the members of a proposed class of similarly-situated individuals "lost valuable time applying for jobs with Defendants for which the wage scale or salary range was not disclosed." (Id. ¶ 33.) But Milito alleges only that he applied for the job, not that he was qualified for the position, that he received any specific response, or that he received an interview offer.

## ANALYSIS

**A.    Plaintiff Lacks Standing**

The Court finds that it lacks subject matter jurisdiction over this matter because Milito does not have Article III standing, having failed to identify a concrete injury from Defendants' failure to provide statutorily-required salary information.

"Under Article III, the Federal Judiciary is vested with the 'Power' to resolve not questions and issues but 'Cases' or 'Controversies.'" Ariz. Christian Sch. Tuition Org. v. Winn, 563 U.S. 125, 132 (2011). "Among other things, that limitation requires a plaintiff to have

1  standing." Fed. Election Comm'n v. Cruz, 596 U.S. 289, 295–96 (2022). If a plaintiff lacks

2  Article III standing, the Court does not have subject matter jurisdiction. See Warth v. Seldin, 422

3  U.S. 490, 498 (1975). "[T]o establish standing, a plaintiff must show (i) that he suffered an

4  injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was

5  likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial

6  relief." TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021) (citing Lujan v. Defenders of

7  Wildlife, 504 U.S. 555, 560–61 (1992)). Plaintiff bears the burden of establishing each of these

8  elements "with the manner and degree of evidence required at the successive stages of the

9  litigation." Lujan, 504 U.S. at 561. "At the pleading stage, general factual allegations of injury

10 resulting from the defendant's conduct may suffice[.]" Id.; accord Tingley v. Ferguson, 47 F.4th

11 1055, 1066 (9th Cir. 2022).

12         This case falls into a category of lawsuits where standing is premised on the violation of a

13 statutory right. "[T]he Supreme Court made clear that a plaintiff does not 'automatically satisf[y]

14 the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to

15 authorize that person to sue to vindicate that right.'" Robins v. Spokeo, Inc. (Spokeo II), 867

16 F.3d 1108, 1112 (9th Cir. 2017) (quoting Spokeo, Inc. v. Robins (Spokeo I), 578 U.S. 330, 341

17 (2016) as revised (May 24, 2016)). To establish a concrete injury, "the plaintiff must allege a

18 statutory violation that caused him to suffer some harm that 'actually exist[s]' in the world; there

19 must be an injury that is 'real' and not 'abstract' or merely 'procedural.'" Id. (quoting Spokeo I,

20 578 U.S. at 340).

21         "Although we often think of 'tangible' injuries as the basis of this jurisdictional

22 requirement, the Supreme Court has confirmed that 'intangible injuries can nevertheless be

23 concrete.'" Magadia v. Wal-Mart Assocs., Inc., 999 F.3d 668, 679 (9th Cir. 2021) (quoting

24

Spokeo I, 578 U.S. at 340). While "[t]he omission of statutorily required information can constitute a distinct, concrete injury," "not 'every minor inaccuracy reported in violation of [a statute] will cause real harm or present any material risk of real harm.'" Id. (quoting Spokeo II, 867 F.3d at 1116). "[A]n intangible injury may be concrete if it presents a material risk of tangible harm or 'has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts,' like common law torts or certain constitutional violations." Phillips v. United States Customs & Border Prot., 74 F.4th 986, 991 (9th Cir. 2023) (quoting Spokeo I, 578 U.S. at 340-41).

"To determine whether the violation of a statute constitutes a concrete harm, we engage in a two-part inquiry." Magadia, 999 F.3d at 679. "We first consider 'whether the statutory provisions at issue were established to protect . . . concrete interests (as opposed to purely procedural rights).'" Id. (quoting Spokeo II, 867 F.3d at 1113). "If so, we then assess 'whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests.'" Id. (quoting Spokeo II, 867 F.3d at 1113).

Although the EPOA protects concrete interests of job applicants, the Court finds that the alleged violation Milito identifies did not cause an actual harm or present a material risk of harm to that interest. The Court reviews its two-part analysis, below.

First, the Court finds that the salary disclosure requirement in the EPOA was established to protect concrete, non-procedural rights for job applicants and employees. The EPOA was recently amended to address the wage gap and income disparities that exist affecting workers in Washington. RCW 49.58.005. The EPOA expressly states that "the legislature intends to require an employer to provide wage and salary information to applicants and employees." RCW 49.58.005(4). To promote this goal, the 2019 Amendments to the EPOA required employers to

provide wage and salary information to applicants upon request, but only "after offering the applicant the position." RCW 49.58.005, -.100-.110. Then in 2022, the Legislature amended the EPOA to increase transparency by requiring proactive disclosure of wage and salary information to "allow[] a discussion at the start of the process instead of after an offer has been made, which will increase the ability to negotiate pay." H.B. Rep. ESSB 5761, at 2. This change was designed to avoid harm to those who "spend hours going through rounds of interviews only to find out they can't live on the offered pay." S.B. Rep. ESSB 5761, at 3. Read together, this legislative history confirms that the EPOA's procedural requirement of disclosure was established to protect applicants by arming them with sufficient information to ensure fair and equitable pay negotiations, and to avoid wasting time interviewing for positions whose pay would never be adequate.

Second, Milito has failed to show how the lack of disclosure caused him an actual harm or material risk of harm consistent with the EPOA. In full, Milito alleges that as a result of the missing pay scale and wage range information, he "lost valuable time," was unable to negotiate, and was "unable to evaluate the pay for the position and compare that pay to other available positions in the marketplace[.]" (Compl. ¶¶ 30-33.) But these allegations fail to show any actual harm against which the EPOA intends to protect. Nowhere has Milito alleged that he was offered an interview or that he engaged in any pay negotiations. All Milito alleges is that he applied to job. And Milito does not even allege he was qualified for the position. As a result, the only injury Milito identifies is the time he "lost" in submitting the application. This is not an injury that the EPOA seeks to prevent or redress. The conclusion reached in a similar case pending this District applies here: "[a] job posting that does not contain compensation information is a technical violation, but it does not harm or create a material risk of harm to any individual's concrete

1 interest" because "[a] nominal applicant with no interest in the position will neither receive a
2 benefit from early pay disclosure nor be harmed by the lack thereof." Floyd v. Insight Global,
3 LLC, C23-1680 BJR, Order Granting Mot. to Dismiss at 14 (W.D. Wash. Apr. 25, 2024). As was
4 the case in Floyd, Milito has failed to identify a concrete and particularized injury sufficient to
5 satisfy Article III standing. Because the Court lacks subject matter jurisdiction, the Court
6 GRANTS the Motion to Remand because it lacks subject matter jurisdiction over this matter.

7     Defendants argue that any decision on remand should be stayed pending the Washington
8 Supreme Court's resolution of a certification question in Branson v. Washington Fine Wines &
9 Spirits, LLC, C24-589 JHC (W.D. Wash. Aug. 20, 2024). (See Opp. at 8–9.) In Branson, the
10 Court certified the question of who constitutes an "job applicant" under the EPOA, including
11 whether the person must be a "bona fide" applicant. The Supreme Court held oral argument on
12 February 13, 2025, but no opinion has issued.

13     Defendants claim that if the Washington Supreme Court holds that the EPOA requires a
14 bona fide applicant, it would result in remand being futile. (Opp. at 8–9.) Perhaps, but it is
15 inconsequential to the issue at hand. Any decision in Branson will not change the fact that the
16 Court lacks subject matter jurisdiction over this matter because Milito lacks standing. For even
17 if Milito were a "bona fide" applicant, he still has not identified any an actual harm sufficient to
18 show an injury for Article III purposes. The Court cannot ignore the fundamental flaw in the
19 removed case, and therefore declines to stay its decision on remand pending the outcome of
20 Branson. See Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Health, 654 F.3d 919, 932
21 n.17 (9th Cir. 2011) (Article III standing "can neither be waived by the parties nor ignored by the
22 court").

**CONCLUSION**

The Court finds that Milito has failed to allege an injury to a concrete interest sufficient to satisfy Article III standing. The Court therefore lacks subject matter jurisdiction, and GRANTS the Motion to Remand. The Court REMANDS this matter to the King County Superior Court.

The clerk is ordered to provide copies of this order to all counsel.

Dated June 5, 2025.

                                                                   Marsha J. Pechman
                                                                   United States Senior District Judge